**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LAMONT PUGH,                                    )
                                                )
                Plaintiff,      )       Civil Action No. 11 - 143
                                                )
               v.               )       Magistrate Judge Cynthia Reed Eddy
                                                )
LOUIS FOLINO; *ET AL*.,                         )
                                                )
              Defendants.       )
                                                )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss Complaint (ECF No. 2) be granted and that Plaintiff's Motion to Appoint Counsel (ECF No. 9) be denied as moot.

**II.     REPORT**

Plaintiff, Lamont Pugh, is a prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) at the State Correctional Institution at Dallas.   At the time he filed this action, he was confined in the State Correctional Institution at Greene.   Pugh initiated this action by filing a document entitled "Petition for Review" in the Court of Common Pleas of Greene County, Pennsylvania on or about January 6, 2011.   On February 3, 2011, Defendants filed a Notice of Removal and the matter was docketed in this Court.   In his Petition, Plaintiff claims that Defendants are liable because several individuals employed at SCI-Greene are in violation of proper food handling procedures.

On March 29, 2011, Defendants filed a Motion to Dismiss the Complaint (ECF No. 2), and a Brief in support (ECF No. 3).   On April 4, 2011, Plaintiff was ordered to file a response to the pending motion by May 4, 2011.   On October 27, 2011, this case was reassigned to me for all

further pretrial proceedings. On November 3, 2011, I issued an Order that Plaintiff file a response to the pending motion to dismiss, or an amended complaint, no later than November 23, 2011. That Order specifically advised Plaintiff that his failure to comply with the Order by November 23, 2011 would result in a report to the District Judge recommending dismissal of this case for failure to prosecute. Plaintiff did not file a response in opposition or an amended complaint by November 23, 2011. Instead, he filed a Motion to Appoint Counsel (ECF No. 9) and a Motion for Government Interference (ECF No. 10). In both motions, Plaintiff claimed that he was unable to respond to the pending motion to dismiss because he had been deprived of access to his legal materials.

In a Response dated December 5, 2011 (ECF No. 11), Defendants informed the Court that Plaintiff refused to adhere to the property restrictions for the restricted housing unit (RHU) where he currently is housed. Specifically, he refused to cull through his materials to gather his pertinent legal documents into one records box, which is all that is allowed in the RHU. Moreover, prisoners in the RHU may exchange legal property once every thirty days and on a more frequent basis if they can show that they are involved in litigation. According to the Response, when Plaintiff learned he could only take one box of materials to his cell, he refused to take anything.

After reviewing the record in this action, and for the reasons set forth below, Defendants' Motion to Dismiss should be granted. Consequently, his Motion for Appointment of Counsel should be denied as moot.

## A. Standard of Review

Presently pending is Defendants' Motion to Dismiss Complaint (ECF No. 2). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a

complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97, 99 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Factual allegations must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). In other words, at the motion to dismiss stage, a plaintiff is required to make a showing rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).. "This does not impose a probability requirement at the pleading stage, but instead, simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. At 232.

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or

identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

*Pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

B. Relevant Allegations and Facts of Record

In his Petition, Plaintiff claims that Defendants are liable for their subordinates' intentional and willfully deliberate indifferent acts of allowing the officers who serve food trays to fail to comply with DOC policy regarding Food Service, DC-ADM 610. Specifically, he claims that Defendants:

> are relieble [sic] for their subordinates intentional and willfully deliberate indifference act. The c/o's who serve the food tray do not comply to Policy DC-ADM 610 IV. Procedure c.) Sanitary and Personal Hygiene (2.) All worker every food services are "shall" always wear hairnets or clean disposable hats and (3.) is the responsibility of they [sic] Policy DC-ADM 610. This is ongoing. The c/o's be [sic] lifting the tray lids off outside in the corridor of (RHU) they be coughing, sneezing, an[d] spitting tobacco in cups and trash can an[d] than [sic] serve trays with the same gloves the [sic] touched trash can and they don't wear no disposable hat or face guard that is unprofessional unethical, unwarrant, an[d] totally unsanitary, an[d] deliberate indifference.

ECF No. 1-2, p.3.

Plaintiff asserts that he complied with the exhaustion requirement by filing Grievance No. 334882 where he set forth the following.

I am filing this Grievance on Louis Folino, Supt.; Jeff Martin; DSFM; Mark Capozza; DSCS; David Grainey, Major; Lorinda Winfield, Major; Paul Walker,

4

Capt. because they are reliable [sic] for their subordinates intentional and willful deliberate indifference and negligence act. The c/o's who serve the food trays do NOT comply to Policy DC-ADM 610 IV Procedure c.) Sanitary and Personal Hygiene (2.) All worker every food services are "shall" always wear hairnets or clean disposable hats and (3.) is the responsibility of the Corrections Food Service Manager to ensure that a class is conduct in basic personal hygiene, Food Service handling. This class "shall" include, but not be limited to, the National Restaurant Film on Personal Hygiene. I am maken [sic] a Good Faith effort to rectify this problem be [sic] filing a lawsuit. On Sept. Monday 6, 2010 I notified Louis Folino, Supt., Jeff Martin, DSFM, Mark Capozza, DSCS, David Grainey, Major, Lorinda Winfield, Major, Paul Walker, Capt. Relief I seek to resolve this problem: Administrative Separation Transfer /or $20,000.00. They do not wear hairnet and hats.

ECF No. 2-1, p. 21).

On September 24, 2010, Corrections Officer Durco provided the following response.

I am in receipt of your grievance dated 13 Sep. 10, and have been assigned to investigate your claim. You state that this grievance is filed against the Superintendent, Deputies, Majors and Capt. Walker as they are all liable for their subordinates. You claim there is intentional and willful deliberate indifference and negligence in reference to Officers not complying with DC-ADM 610. *"You state policy DC-ADM 610 IV Procedure C.) Sanitary and personal hygiene (2.) All worker every food services are, "Shall" always 'Wear" hairnets or clean disposable hats and (3.) is the responsibility of the corrections food service manager to ensure that a class is conduct in basic personal hygiene."*

In relief you seek an administrative separation transfer or $20,000.00.

Mr. Pugh, I reviewed the sections of policies that you have quoted as well as most other sections of this policy. This section of the policy covers all inmate food service workers and has nothing to do with the Officers passing out the trays. The inmates preparing the trays for the RHU do following [sic] this policy and are supervised by a Food Service Instructor. The Officers handing out the trays in the RHU have nothing to do with the preparation of the trays thus are not required to wear white clothing or smocks and hairnets. Officers do wear clean latex or nitrile gloves when handing out food trays as required.

With the policy and procedures you are referring to involve the preparation of food and food trays by inmates and having nothing to do with the Officers passing out the trays, I find no reason to transfer you from this facility. You have not justified your claim of deliberate indifference and negligence when you refer to a policy that governs inmate food service workers. I find [no] justification to award you $20,000.00 when there has been no violation to policy.

There is no merit to be found in your grievance; therefore it is considered frivolous and summarily denied.

ECF No. 2-1, p. 23.

Pugh filed a timely appeal to the Superintendent at SCI-Greene, wherein he asserted the following.

"Policy state: 'All worker every food service area"! That mean wherever food is served, an[d] the guards in the (RHU) handle the food and serve the trays an[d] they do 'NOT' wear hairnets or clean disposable hats! There they are '<u>NOT Adhering</u>' to <u>Policy</u>'…."

ECF No. 2-1, p. 25. Superintendent Folino denied the appeal on June 30, 2008 concurring with the initial response. ECF no. 2-1, p. 27.

Pugh pursued his grievance to final review, which was denied on November 16, 2010 by the Secretary's Office of Inmate Grievances and Appeals as follows.

You state that the officers are not complying with the procedures outlined in DC ADM 610 when distributing food trays in the RHU as they do not wear hairnets or clean disposable hats. Your concerns have been reviewed. Records reflects that the section(s) of DC ADM 610 that you are citing are in regards to inmate food service workers and not the officers who distribute the meals in the RHU. The Department must comply with the PA Food Code as a minimum. Under the PA Food Code, there is specific information regarding hair restraints and the general requirements are for food employees to wear hair restraints to keep hair from contacting exposed food and utensils. This requirement does not apply to food employees who present minimal risk of contaminating food and utensils. Officers who are simply distributing food trays to inmates eating in their cells present minimal risk of contaminating food and utensils and thus are exempt from the requirement to wear hair restraints. The food trays that are delivered to the RHU are delivered covered and the covers effectively protect the food from potential contamination. Therefore your grievance appeal to this office is denied as well as your request relief to receive an administrative separation transfer or monetary compensation.

ECF No. 2-1, p. 29.

C. <u>Exhaustion of Administrative Remedies</u>

This Court may review only those claims that Plaintiff fully has exhausted as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996).   In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners.   Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit.   The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)     Applicability of administrative remedies
>
> > No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).   In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.   In so holding, the court specifically rejected the notion that there is a futility exception to section 1997e(a)'s mandatory exhaustion requirement.   Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.   A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System). The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

In the instant action, Plaintiff filed Grievance No. 334882 through final review: Thus, he exhausted claims raised by Grievance No. 334882 relating to the Corrections Officers not wearing hairnets or clean disposable hats while distributing food trays to RHU inmates. However, Grievance No. 334882 does not include any claim related to Corrections Officers coughing, sneezing and spitting tobacco or wearing gloves that are used to handle trash. Consequently, Plaintiff has procedurally defaulted these claims.

In this regard, the Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the

> agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Id. at 94.

In the case at bar, Plaintiff procedurally defaulted all of his claims that he did not pursue through a timely filed grievance. As stated by the Court of Appeals for the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73 (quotation omitted). Consequently, this Court concurs with Defendants' argument that Plaintiff's claims that he did not fully exhaust through the available administrative procedures are procedurally defaulted. Accord Rozzelle v. Rossi, 307 Fed. App'x 640, 642 (3d Cir. 2008) (finding that inmate's failure to file for final review amounted to procedural default thereby precluding his claims); Eakle v. Palakovich, 200 Fed. App'x 155, 156 (3d Cir. 2006) (same).

E. Merits of Plaintiff's Exhausted Claim

9

As stated above, Plaintiff fully exhausted the issues related to Corrections Officers not wearing hairnets or disposable hats in violation of DC-ADM 610. First, the Court notes that Plaintiff's complaint that Defendants failed to comply with a DOC policy fails to state a constitutional claim and, therefore, is not cognizable in a section 1983 suit. Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir. 1986) ( "In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same."). In other words, simply because the state mandates that certain procedures be complied with does not mean that those procedures are of constitutional significance. Hence, the failure to comply with them, in and of itself, does not deprive Plaintiff any constitutional rights.

Here, Plaintiff asserts that the manner in which his meal trays are served in the RHU constitutes deliberate indifference. This language appears to invoke the protection of the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Specifically, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence

that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. Farmer, 511 U.S. at 842, 846, and n. 9.

It is well settled that prisoners are entitled to a nutritionally adequate diet. Laufgas v. Speziale, 263 Fed. App'x 192, 198 (3d Cir. 2008) (citing Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)). However, they have no constitutional right to be served a particular type of meal. Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990); Boswell v. Myers, 909 F.2d 1482 (6th Cir. 1990) (Table) (subjecting inmates to a food loaf diet for as long as fourteen days does not constitute a violation of the Eighth Amendment); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (dismissing Eighth Amendment claim for the denial of meals because the Constitution does not guarantee specific amounts of food and because the complaint did not contain allegations that the inmate "went hungry").

In the present action, Plaintiff does not allege that he has been deprived of the minimal civilized measure of life's necessities such as food, water, shelter, or that he has been otherwise injured by Defendants' conduct. Inasmuch as he does not contend that he was denied meals, nor that he suffered any ill effects from Defendants' alleged actions, he has failed to state a claim *See, e.g.*, Ford v. Brd. of Mgrs of New Jersey State Prison, 407 F.2d 937, 939-940 (3d Cir. 1969) (no Eighth Amendment claim where prisoner fed four slices of bread and one pint of water three times a day with a full meal every three days); Adams v. Kincheloe, 743 F. Supp. 1385, 1391 (E.D. Wash. 1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment especially since inmate did not suffer from any weight loss or medical conditions).

III.    **CONCLUSION**

Based on the discussion above, it is respectfully recommended that Defendants' Motion to Dismiss Complaint (ECF No. 2) be granted and that Plaintiff's Motion to Appoint Counsel (ECF No. 9) be denied as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report.   Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto.   Failure to timely file objections will constitute a waiver of any appellate rights.

<u>/s Cynthia Reed Eddy</u>
Cynthia Reed Eddy
U.S. Magistrate Judge

Dated:   December 8, 2011

**cc:**    Lamont Pugh, BG-9048
SCI Dallas
Follies Road, Drawer K
Dallas, PA 18612-0286